UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT LEWIS
KAMPHAUS,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

Case No. 2:17-cv-11828
District Judge David M. Lawson
Magistrate Judge Anthony P. Patti

**<u>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT OR REMAND (DE 9), GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 10) and
AFFIRM THE COMMISSIONER'S DECISION</u>**

**I.     RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (DE 9), **GRANT** Defendant's motion for summary judgment

(DE 10), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

         Plaintiff, Robert Lewis Kamphaus, brings this action under 42 U.S.C. §

405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner") denying his application for disability insurance (DI) benefits.

This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment or remand (DE 9),
the Commissioner's cross-motion for summary judgment (DE 10), and the
administrative record (DE 7).

### A.     Background and Administrative History

#### 1.     Plaintiff's first unfavorable decision and his prior appeal

By way of background, ALJ Melvyn B. Kalt issued an unfavorable decision
on May 23, 2013.  (R. at 58-73.)  On June 13, 2013, Plaintiff underwent a lumbar
spine MRI.  (R. at 241-242.)  Notably, the Appeals Council (AC) acknowledged
receipt of medical records from Eastside Internal Medicine dated June 13-17, 2013,
which apparently refers to the post-decision diagnostic test, and, on April 22, 2014,
the AC denied Plaintiff's request for review.  (R. at 74-79.)  Thus, ALJ Kalt's
decision became the Commissioner's final decision as to that application.

This decision was the subject of Plaintiff's prior June 24, 2014 appeal to this
Court, wherein my June 22, 2015 report and recommendation noted, *inter alia*, that
"even if the MRI did indicate further limitations, Plaintiff's June 13, 2013 MRI
was completed after the ALJ's May 23, 2013 opinion, and Plaintiff does not
demonstrate how the MRI reflected his condition during the pendency of the
proceedings."  Case No. 2:14-cv-12486-DML-APP (E.D. Mich.) (DE 17 at 22).
This case culminated in a September 30, 2015 judgment in the Commissioner's
favor, along with an opinion and order that addressed the materiality of the June

13, 2013 MRI.  *See* Case No.  2:14-cv-12486-DML-APP (DEs 20 therein at 6 ("It is not readily apparent that the differences in the 2003 and 2013 MRI reports are medically significant."), 21).

### 2.   Plaintiff's second unfavorable decision and the instant appeal

In the case at bar, Plaintiff alleges his disability began on May 24, 2013 −– the day *after* the ALJ's first unfavorable decision but a date *before* the alleged new and material lumbar spine MRI −– at the age of 61.  (R. at 130.)  He lists several conditions (bad back, sleep disorder, high cholesterol, and high blood pressure) that limit his ability to work.  (R. at 157.)  His application for DI benefits was denied on August 19, 2014.  (R. at 130-136, 80-97.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 100-101.)  ALJ Kari Deming held a hearing, and, on March 17, 2016, determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 15-57.)

On May 2, 2016, Plaintiff's counsel wrote to the AC and set forth the following arguments:

1.    The ALJ's RFC assessment fails to include any exertional limitations even though there is objective medical evidence confirming the existence of a severe back impairment.

2.    The ALJ committed reversible error in failing to accord proper weight to the opinion [of] the claimant's primary care physician, Dr. Paul Burgoyne.

3

(R. at 206-207.)  On April 13, 2017, the AC denied Plaintiff's request for review.  (R. at 1-6, 14.)  Thus, ALJ Deming's decision became the Commissioner's final decision as to the application at issue.

Plaintiff timely commenced the instant action on June 9, 2017.  (DE 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 124 pages of medical records, all of which were available to the ALJ at the time of her March 17, 2016 decision.  (R. at 29, 208-331.)  These records will be discussed in detail, as necessary, below.

### C.    Hearing Testimony

#### 1.    Plaintiff's Testimony

Plaintiff testified at the January 20, 2016 hearing, when he was 63 years old.  (R. at 35-47, 49-52, 56.)  As Plaintiff is not expressly challenging the ALJ's credibility assessment in the instant appeal, the Court will forego further summary of his testimony here and will only refer to it as necessary below.

#### 2.    Vocational Expert Testimony

Vocational expert (VE) Pauline Pegram testified at the hearing.  (R. at 47-49, 52-56, 198-200, 203.)   Of particular pertinence is her testimony that a person of Plaintiff's "age, education and work experience, able to perform and sustain work at any exertional level, who can engage in work consisting of simple routine

tasks," could not perform Plaintiff's past work as a production planner but could perform work as an order filler/warehouse worker, a sweeper cleaner, and a hand packager.  (R. at 52-54.)

### D.    The Administrative Decision

On March 17, 2016, ALJ Deming issued her decision.  (R. at 15-29.) Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of May 24, 2013 through his date last insured of June 30, 2015.  (R. at 20.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  affective disorder and sleep apnea.  (R. at 20-21.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 21-22.)  Between **Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and determined that, through the date last insured, Plaintiff had the RFC:

> . . . to perform a full range of work at all exertional levels, limited to work permitting the Claimant to engage in only simple, routine, and repetitive tasks (unskilled).

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

(R. at 22-24.)  At **Step 4**, the ALJ determined that, through the date last insured,

Plaintiff was unable to perform any past relevant work.  (R. at 24-25.)  At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that, through the date last insured, there were jobs that existed in

significant numbers in the national economy that Plaintiff could have performed.

(R. at 25-26.)  The ALJ therefore concluded that Plaintiff had not been under a

disability, as defined in the Social Security Act, at any time from May 24, 2013,

the alleged onset date, through June 30, 2015, the date last insured.  (R. at 26.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

6

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

F.    **Analysis**

On appeal, Plaintiff alleges that the ALJ:  **(1)** improperly applied Acquiescence Ruling 98-4(6); and, **(2)** erred by failing to find the Plaintiff's back impairment as severe at Step 2, which resulted in an inaccurate RFC at Step 5. (DE 9 at 9-16.)  The Commissioner argues that "the ALJ properly considered the evidence since the prior ALJ's decision and supportably found that Plaintiff did not have a severe back impairment and had no physical limitations."  (DE 10 at 10-14.)

### 1.   Acquiescence Ruling 98-4(6)

#### a.   *Drummond* and *Earley*

The Sixth Circuit has directed that, "[a]bsent evidence of an *improvement* in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) (emphasis added).  Following *Drummond*, the Commissioner issued AR 98-4(6), which provides, in part:

> When adjudicating a subsequent disability claim with an **unadjudicated** period arising under the same title of the Act as the prior claim, adjudicators *must adopt* such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the **unadjudicated** period *unless* there is *new and material evidence* relating to such a finding or there has been *a change in the law, regulations or rulings* affecting the finding or the method for arriving at the finding.

AR 98-4(6), 63 Fed. Reg. 29771-01 (June 1, 1998) (emphases added).

Accordingly, this Court has observed that, "[w]hen considering a renewed

application for benefits, SSAR 98-4(6) and *Drummond* create a presumption that facts found in a prior ruling remain true in a subsequent unadjudicated period unless 'there is new and material evidence' showing changed circumstances occurring after the prior decision." *McAllister v. Comm'r of Soc. Sec.*, No. CV 15-13605, 2016 WL 11258182, at *17 (E.D. Mich. Sept. 26, 2016) (Morris, M.J.), *report and recommendation adopted as modified sub nom. McAllister v. Colvin*, No. 15-13605, 2017 WL 1190952 (E.D. Mich. Mar. 31, 2017) (Berg, J.).

It is clear that *Drummond* and/or AR 98-4(6) played a part in the ALJ decision at issue in the instant appeal.  Plaintiff's 2014 disability determination applied, among other things, AR 98-4(6).  (R. at 91.)  Plaintiff's counsel's January 18, 2016 letter to ALJ Deming cites *Drummond* and asserts that "the medical evidence of record shows the claimant suffers from additional severe impairments not considered in the prior decision . . . ."  (R. at 201.)  Still, ALJ Deming's March 17, 2016 decision notes that, "[p]ursuant to Acquiescence Rulings 98-3(6) and 98-4(6)," she was "bound by certain of Judge Kalt's findings."  (R. at 18.)

However, very recently, the Sixth Circuit issued a published decision that clarifies *Drummond*'s reach, with only a passing reference to AR 98-4(6)'s "new and material evidence" requirement.  *See Earley v. Comm'r of Soc. Sec.*, No. 17-4007, 2018 WL 3134547 (6th Cir. June 27, 2018).  In *Earley*, the Sixth Circuit stated:

> "*Res judicata* bars attempts to relitigate the *same* claim, but a claim
> that one became disabled in 1990 is not the *same* as a claim that one
> became disabled in 1994." *Groves v. Apfel*, 148 F.3d 809, 810 (7th
> Cir. 1998). Just so here. Had Earley filed a second application for
> disability benefits for June 25, 2010 to May 15, 2012, the *same* period
> covered by her first application, the ALJ could have correctly rejected
> it on *res judicata* grounds and the principles of finality that it
> supports. But Earley did not do that. She filed a *new* application for a
> *new* period of time. When an individual seeks disability benefits for a
> distinct period of time, each application is entitled to review. There is
> nothing in the relevant statutes to the contrary. And *res judicata* only
> "foreclose[s] successive litigation of the very *same* claim." *New
> Hampshire v. Maine*, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d
> 968 (2001).

*Earley v. Comm'r of Soc. Sec.*, No. 17-4007, 2018 WL 3134547, at *3 (6th Cir.

June 27, 2018) (emphases added).

### b.    Consideration of the June 13, 2013 lumbar spine MRI

Plaintiff contends that, on March 17, 2016, ALJ Deming erroneously

adopted ALJ Kalt's May 23, 2013 findings, "despite new and material evidence

which clearly shows a worsening of condition." (DE 9 at 10, 58-73, 22.) By way

of background, it appears that Plaintiff underwent a lumbar spine MRI on October

31, 2003, which was Exhibit 5F to ALJ Kalt's May 23, 2013 decision. (R. at 73.)[2]

On June 13, 2013 – approximately three weeks after the prior decision - Plaintiff

underwent a lumbar spine MRI. (R. at 241-242.) Among other things, the

---

[2] This record does not appear to be contained within the administrative transcript
for the instant appeal; however, it is Exhibit 5F within the administrative transcript
of Plaintiff's prior appeal and shows multiple impressions, including multiple
indications of foraminal encroachment. *See* 2:14-cv-12486-DML-APP (DE 7-7 at
45-57 [R. at 202-204].)

radiologist found the following at L2-3:  "Compressive central/left paracentral/left foraminal/left lateral disc herniation with some cephalad migration of disc material and *marked compromise* of the left exiting neural foramina, and there is also a degree of right foraminal encroachment."  (R. at 241 (emphasis added).) Furthermore, the radiologist had the following impressions:

1.   *Compressive* central/left paracentral/left foraminal/left lateral superiorly migrated disc herniation at L2-3 and small left foraminal/left lateral disc herniation at L1-2.

2.   Disc herniation lateralizing to the tight with *right foraminal encroachment* at L3-4.

3.   Broad-based hard disc with *more prominent disc material* lateralizing to the left paracentral/left lateral/far left lateral distribution with left foraminal encroachment and, to a lesser extent, *right foraminal encroachment* at L5-S1.

4.   *Disc bulging* at L4-5.

5.   Likely cystic structure involving the right kidney measuring at least 2.2 cm as Visualized; however, not certain if this is a simple cyst based on this study alone. Correlate with additional imaging to ensure simple cyst.

(R. at 242 (emphases added).)

Each of these diagnostic findings was reviewed by the state agency consultant(s) within the 2014 disability determination.  (R. at 84-85.)  Nonetheless, state agency medical consultant Muhammad Ahmed, M.D. "ad[o]pted" ALJ Kalt's May 23, 2013 decision, explaining:

> CLMT HAS DD, POSSIBLE IMPINGMENT SYNDROME RT
> SHOULDER, OSA, HTN, OBESITY AND HYPERLIPIDEMIA.
> OVERALL, THERE IS **NO SIGNIFICANT CHANGE** SINCE ALJ.
> THEREFORE, ALJ IS ADAPTED [sic] AS SUCH THAT CLMT
> HAS THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM
> FULL RANGE OF WORK AT ALL EXERTIONAL LEVELS BUT
> LIMITED TO SIMPLE, REPETITIVE RO[U]TINE TASKS.

(R. at 88 (emphasis added).) In her March 17, 2016 decision, ALJ Deming found:

"An MRI of the lumbar spine taken on June 13, 2013 revealed multilevel

degenerative changes consistent with earlier findings (Exhibit B3F [R. at 241-

242]). In fact, the MRI was essentially unchanged from the earlier findings from

October 31, 2003." (R. at 23.) It is clear to the Undersigned that ALJ Deming did

not simply apply *res judicata* principles and adopt ALJ Kalt's findings "lock, stock

and barrel," but, instead, gave new consideration and analysis to the June 2013

MRI, which had been submitted to a state agency medical consultant.

> **c.    State agency medical consultant Dr. Ahmed's
>        consideration of the June 13, 2013 lumbar MRI**

Plaintiff claims this finding was improper. Citing differences between the

2003 and 2013 MRIs, Plaintiff contends that "[t]he 2013 MRI shows significant

deterioration characterized by a compressive disc herniation, marked compromise

of the neural foramina, new finding of disc bulging and involvement of the exiting

neural foraminal, and a broad-based hard disc with more prominent disc material."

(DE 9 at 11-12.)

It seems that "foraminal encroachment" was present on both October 31, 2003 and June 13, 2013 lumbar spine MRIs.  (*Compare* R. at 85, 241.) Nonetheless, whatever differences materialized in the 10 years between the 2003 and 2013 MRIs, the Commissioner correctly points out that the state agency reviewer(s):  **(a)** considered the June 2013 lumbar MRI; **(b)** opined that Plaintiff's spine, muscle, ligament and fascia disorders were "non severe;" and, **(c)** adopted the May 23, 2013 decision, explaining that Plaintiff had the RFC to perform a "full range of work at all exertional levels . . . ."  (DE 10 at 11, R. at 84-85, 88, 58-79; *see also* R. at 22, 65.)  Relatedly, ALJ Deming stated:

> Muhammad Ahmed, M.D., also reviewed the evidence of record as of August 11, 2014, and noted that there was **no significant change** in the claimant's condition since the prior decision (Exhibit B3A [R. at 80-92]).  The opinions of Dr. Moten and Dr. Ahmed are given *great weight*, based on their impartiality and the consistency of their opinions with the evidence as a whole.

(R. at 24 (emphases added).)  As Defendant points out and as framed above, Plaintiff has not challenged the ALJ's assignment of "great weight" to Dr. Ahmed's opinion.  (*See* DE 10 at 11.)   Plaintiff's statements of error only challenge the ALJ's application of AR 98-4(6) and consideration of Plaintiff's back impairment at Step 2 and within the RFC determination.  (*See* DE 9 at 9-12.) In light of Dr. Ahmed's consideration of the October 31, 2003 and June 13, 2013 lumbar spine MRIs, his opinion that Plaintiff's spine, muscle, ligament and fascia disorders were "non severe," and his adoption of the May 23, 2013 decision

(including the explanation that there was "no significant change"), the ALJ's finding that "the MRI was essentially unchanged from the earlier findings" does not appear to be in error and is supporting by substantial evidence.

### d.   Harm

Even if, *arguendo*, ALJ Deming had improperly interpreted the June 13, 2013 MRI evidence as "essentially unchanged" from the October 31, 2003 findings (*see* R. at 23), Plaintiff has not shown harm resulting from the latest ALJ's construction of the June 2013 MRI evidence. *Boykins v. Comm'r of Soc. Sec.*, No. 1:13-CV-1024, 2015 WL 1477756, at *5 (W.D. Mich. Mar. 31, 2015) ("even if both *Drummond* and AR 98–4(6) are construed as applicable to a previous finding of a severe impairment, any alleged error by ALJ Jones was harmless."); *Miller v. Comm'r of Soc. Sec.*, No. 2:13-CV-705, 2014 WL 4273047, at *4 (S.D. Ohio Aug. 29, 2014) (applying harmless error standard).

Plaintiff claims that that ALJ Deming's "mistake" is not harmless, as "these significant changes would lead to a more restrictive RFC than being able to perform work at all exertional levels." (DE 9 at 11-12.)  However, this single, unsupported and argumentative statement fails to show harmful error in ALJ Deming's treatment of this evidence between Steps 3 and 4.  In other words, Plaintiff has not met his burden to successfully challenge ALJ Deming's RFC determination.  Thus, Plaintiff is not entitled to remand for ALJ Deming's alleged

improper application of AR 98-4(6). *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("the burden of proof lies with the claimant at steps one through four of the process, culminating with a claimant's proof that she cannot perform her past relevant work.").

### 2. The severity of Plaintiff's back impairment

Plaintiff challenges the ALJ's failure to consider Plaintiff's back impairment as "severe" at Step 2, and the effect of this failure upon the ALJ's RFC assessment. (DE 9 at 12-16.) Preliminarily, the Court does not interpret Plaintiff's argument as a developed challenge to ALJ Deming's March 17, 2016 assessment that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (R. at 23.) Such arguments are ordinarily accompanied by references to 20 C.F.R. §§ 404.1529 and/or 416.929, SSR 96-7p and/or SSR 16-3p, and Plaintiff has not identified the ALJ's credibility findings as an issue of this appeal. (*See* DE 9 at 9.)

### a. Step 2

Specifically, ALJ Deming found that Plaintiff's "degenerative changes of the lumbar spine" were "non-severe or not medically determinable . . . ." (R. at 20-21.) "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). "An impairment or combination of

impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a *slight abnormality* or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ." SSR 85-28 (S.S.A. 1985 (emphasis added)). Plaintiff claims that the medical evidence of record and his testimony show that his "back impairment causes more than a 'slight abnormality' that minimally affects work ability." (DE 9 at 13-14.) In this regard, Plaintiff relies upon the aforementioned June 13, 2013 lumbar MRI and the July 18, 2014 physical medicine CE report of Jose Mari G. Jurado, M.D., whose impressions were:

> 1. Complex chronic pain in the upper and lower back syndrome with positive Valsalva in cervical and lumbar spine.
>
> 2. Right rotator cuff impingement syndrome.
>
> 3. Right hip pain.
>
> 4. MRI reports reveal lumbar disc herniations at multiple levels from L1 to L4 with disc bulging to the rest.

(DE 9 at 13, R. at 241-242, 268-275.)

However, "[a]ccording to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation as outlined above." *Maziarz v. Sec'y of Health & Human*

*Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Put another way, "where the ALJ finds

the presence of a severe impairment at step two and proceeds to continue through

the remaining steps of the analysis, the alleged failure to identify as severe some

other impairment constitutes harmless error so long as the ALJ considered the

entire medical record in rendering his decision."  *Sheehy v. Comm'r of Soc. Sec.*,

No. 1:15-CV-001, 2015 WL 6394780, at *4 (W.D. Mich. Oct. 21, 2015) (citing

*Maziarz,* 837 F.2d at 244).

> **b.    Consideration of Plaintiff's back impairment within
> the RFC determination**

Here, ALJ Deming determined that Plaintiff's affective disorder and sleep

apnea qualified as severe impairments and proceeded through Steps 3 through 5.

"Where ... the ALJ finds at Step Two that a claimant suffers from at least one

severe impairment, the ALJ is required to consider the limiting effects of *all*

impairments—including limitations resulting from non-severe impairments—when

determining the claimant's RFC at Steps Four and Five." *Garcia v. Comm'r of Soc.

Sec.*, 105 F. Supp. 3d 805, 810-811 (S.D. Ohio 2015) (italics in original).  In other

words, "[o]nce one severe impairment is found, the combined effect of all

impairments must be considered, even if other impairments would not be severe."

*White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009) (referencing

20 C.F.R. §§ 404.1523, 404.1545(a)(2)).

Here, a point of clarification is necessary.  Plaintiff claims that ALJ Deming did not consider the limiting effects of his back impairment "in her Step Five analysis."  (DE 9 at 14.)  More accurately, this is a challenge to ALJ Deming's RFC determination between Step 3 and Step 4 that Plaintiff has the RFC to perform "a full range of work at all exertional levels," which informed her hypothetical to the VE of an individual "able to perform and sustain work at any exertional level . . . ."  (R. at 22, 53.)  This interpretation is buttressed by the fact that ALJ Deming's hypothetical to the VE is nearly identical to the RFC determination.  (*Compare* R. at 53, 22.)  By mis-framing the argument in this fashion, Plaintiff seemingly attempts to shift the burden from himself to the Commissioner, but, recognizing that this is more accurately framed as a Step 4 issue, the burden remains with the Plaintiff.  *Walters*, 127 F.3d 525, 529 (6th Cir. 1997).  *See also Pettit v. Comm'r of Soc. Sec.*, No. 2:16-CV-12811, 2017 WL 3781852, at *2 (E.D. Mich. Aug. 14, 2017) (Patti, M.J.) (clarifying issue before the Court), *report and recommendation adopted*, No. 16-12811, 2017 WL 3720447 (E.D. Mich. Aug. 29, 2017) (Lawson, J.).

Having previously addressed the ALJ's consideration of the June 13, 2013 lumbar spine MRI, the Court's attention turns its attention to the ALJ's consideration of the CE report within the RFC determination.  Relatedly, ALJ Deming stated:

The claimant was examined by Jose Mari G. Jurado, M.D. on July 18, 2014 and noted to have complaints of low back and leg pain. However, he was able to ambulate without a cane, and to sit and stand without assistance.  Postural activities were unlimited and the claimant retained full range of motion in all domains.  *Dr. Jurado opined that the claimant's limitations were mild to moderate* (Exhibit B6F [R. at 268-275]).  Dr. Jurado's findings and opinions are given some weight as they are generally consistent with the evidence as a whole.  However, the claimant's back condition has not objectively been proven to cause more than a minor interference with his ability to work, and appears objectively identical to his condition at the time of the prior decision.

(R. at 23 (emphasis added).)

Moreover, as the Commissioner points out, the state agency reviewer(s) (Drs. Ahmed / Moten):  **(a)** considered Dr. Jurado's July 18, 2014 CE report (R. at 84); **(b)** determined that Plaintiff's spine, muscle, ligament and fascia disorders were "non severe," (R. at 85); and, **(c)** adopted the May 23, 2013 RFC of "full range of work at all exertional levels . . . [,]" (R. at 88, 65).  The ALJ assigned great weight to the opinions of the state agency consultants (R. at 24) and no weight to the January 27, 2016 opinions of Dr. Burgoyne (R. at 23, 276-279).  (*See* DE 10 at 11-12, 14.)  Thus, the ALJ's findings with respect to Plaintiff's back at both Step 2 and in the RFC determination are supported by substantial evidence.

### c.    Undeveloped credibility and opinion evidence arguments

Plaintiff claims that the objective medical evidence and his testimony "line up."  For example:

- He "can't even go a quarter mile anymore. Maybe five or six, seven houses and turn around and come back." (R. at 41.)

- He does not "lift any more than ten pounds." (R. at 41; *see also* R. at 44.)

- On a typical day, he sits in his La-Z-Boy chair "three, four hours maybe." This helps him "prop [his] feet up." (R. at 41.)

- He "can sit maybe an hour or so, and then [he] usually get[s] up and walk[s] around." (R. at 39.)

- He can stand "at the most maybe a half hour, hour if [he] was forced to do it." (R. at 40.)

(DE 9 at 15.) Although this bears upon consistency, Plaintiff's appeal does not involve a developed credibility argument, nor does Plaintiff seem to be challenging the ALJ's assignment of "great weight" to Dr. Ahmed's opinion (R. at 80-92), while assigning "some weight" to Dr. Jurado's opinions (R. at 268-275) and "no weight" to Dr. Burgoyne's physical RFC questionnaire (R. at 276-280). (R. at 23-24.) (*See also* 20 C.F.R. §§ 404.1527, 416.927.) "'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir.1995)).

### d.    Harm

Plaintiff's "harmful error" argument is based on ALJ Deming's alleged failure to "consider the limiting effects of [his] back impairment . . . ." (DE 9 at 14.)  According to Plaintiff, "[i]t is clear that there would be significant standing/walking limitations, lifting restrictions, and postural limitations[,] considering there is evidence of herniated discs and marked compromise of the neural foramina." (DE 9 at 14-15.)  Plaintiff further contends it is improper to omit exertional limitations where there is "objective evidence of multiple disc herniation" and "subjective testimony of an inability to stand/walk or sit for extended periods . . . ." (DE 9 at 15.)

Other than a presumed reference to the June 13, 2013 lumbar spine MRI, Plaintiff's basis for making these bold assertions is unclear, nor is it evident how a reviewing court could reach such definitive conclusions without either relying on an expert of its own or reweighing the existing evidence, *e.g.*, by choosing to credit a different expert opinion than the one credited by the ALJ.  Standing alone, these assertions fail to show harmful error in ALJ Deming's Step 2 determination that Plaintiff's "degenerative changes of the lumbar spine" were "non-severe or not medically determinable," (R. at 20-21), to the extent it informed the ALJ's unlimited, exertional RFC assessment.  *Her*, 203 F.3d at 391.  As such, Plaintiff is not entitled to remand on this basis.  Though there may be evidence in this record tending in both directions, this Court's "task is not to reweigh the evidence [*i.e.*, in

favor of a different outcome]. That is solely the province of the Secretary."

*Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982)

(citing *Wokojance v. Weinberger*, 513 F.2d 210 (6th Cir. 1975)). Nor should the

Court "resolve conflicts in evidence . . . ." *Bass*, 499 F.3d 509.

### G.    Conclusion

Plaintiff's motivation for challenging the RFC's lack of exertional

limitations is clear to the Court. During an exchange with the VE, Plaintiff

estimated that in his former work, he spent "every bit of three hours" of his day on

his feet, which appears to have influenced the VE's classification of his prior work

as a production planner / production scheduler as "at least light . . . ." (*See* R. at

50, 52.) In this appeal, Plaintiff asserts he "would be rendered disabled pursuant to

Medical Vocational Rule 202.06 a RFC for light work, where[,] as in this case[,]

the Plaintiff is 62 years old at the alleged onset date . . . ." (DE 9 at 15, R. at 55.)

Nonetheless, Plaintiff has not met his burden on either of the issues set forth

in his appeal. He has failed to show either an error in ALJ Deming's application of

AR 98-4(6) or harm resulting from alleged misconstruction of the June 13, 2013

lumbar spine MRI. Moreover, Plaintiff has failed to show error at Step 2 or within

the assessment of the RFC's exertional limitations. Accordingly, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (DE 9), **GRANT** Defendant's motion for summary judgment

(DE 10), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  July 23, 2018          s/Anthony P. Patti
                               Anthony P. Patti
                               UNITED STATES MAGISTRATE JUDGE

## Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on July 23, 2018, electronically and/or by U.S. Mail.

                               s/Michael Williams
                               Case Manager for the
                               Honorable Anthony P. Patti